IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **THERESA M. STEWART**, | Case No. 4:11 CV 224 |
| Plaintiff, | Judge Donald C. Nugent |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp II |

**Introduction**

Plaintiff Theresa Stewart appeals the administrative denial of supplemental security income benefits (SSI) under 42 U.S.C. § 1383.[1] The district court has jurisdiction under 42 U.S.C. § 1383(c)(3).

This matter was originally filed in the United States District Court for the Western District of Arkansas. Following submission of the briefs, that court concluded that the case should have been filed in this district, and transferred the case on December 28, 2010. (Doc. 13). Subsequently, the matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

---

[1] Although the Complaint alleges that the action is brought pursuant to 42 U.S.C. § 405(g), that statute refers to disability insurance benefits (DIB), whereas this action is actually an appeal of the denial of SSI benefits. Nevertheless, the Court has construed the claim as having invoked the proper statute and, in any event, the SSI statute incorporates the judicial review component of the DIB statute. *See* 42 U.S.C. § 1383(c)(3).

**Procedural Background**

On February 6, 2007, Plaintiff protectively filed an application for SSI payments alleging disability since February 1, 1996, due to epilepsy. (Tr. 101, 147). In reports filed with her application, she also complained of anxiety and stress, which caused migraine headaches. (Tr. 155, 197). The Agency denied her application initially and on reconsideration. (Tr. 45, 49).

Pursuant to Plaintiff's request, an ALJ held a hearing on February 3, 2009, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. (Tr. 6-28). In her Decision, issued on April 2, 2009, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels, with seizure precautions and limited interpersonal contact, including her past relevant work as a hand trimmer, and thus was not disabled. (Tr. 38-43). Plaintiff's request for review of the decision was denied by the Appeals Council on August 27, 2009 (Tr. 1-4), at which point the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the final administrative decision under 42 U.S.C. §§ 1383(c)(3) and 405(g).

**Factual Background**

Plaintiff was born on December 5, 1978 and was 30 years old on the date of her hearing. She has a high school equivalent education, and two semesters of college classes. (Tr. 153). Plaintiff has past relevant work experience as a hand trimmer, cashier, and customer service clerk. (Tr. 23-25, 148). She testified that she lived in Ohio with her aunt and uncle, and with her young daughter. (Tr. 10-11, 19-20). She stated she had seizures causing loss of consciousness, and that these occurred more often when she experienced stress and anxiety. (Tr. 13). Plaintiff testified she had taken Depakote for four or five years, but had noticed no change in the frequency of seizures,

which occurred about every one and one-half to two weeks. (Tr. 14, 16). She had a seizure-free period of time when she lived in the Arkansas mountains with her mother and daughter, but her anxiety increased when she moved to an apartment in Fayetteville with her brother. (Tr. 15-16). Plaintiff testified she did not take any anti-anxiety medication because Xanax combined with Depakote made her too drowsy and disoriented. (Tr. 18). She admitted she had taken Effexor for a while, but stopped when Psych Care discharged her after she missed a couple of appointments. (Tr. 19). Even though Plaintiff had Medicaid in Ohio, which helped her to pay for treatment (*id.*), she had not sought additional psychiatric care because she was told she would have to get re-evaluated at the psychiatric unit at the hospital, and she was not willing to do that (Tr. 20). Additionally, Plaintiff admitted she had smoked marijuana on a regular basis, but she testified she had not smoked marijuana since October 2008. (Tr. 19). Plaintiff testified breathing exercises helped "a lot" to control her anxiety. (Tr. 20-21).

Plaintiff described her past work as a blanket trimmer (hand trimmer) as involving sitting down, and cutting excess strings off of blankets after a machine had embroidered them. (Tr. 23-24). David O'Neil, a vocational expert (VE), testified the Dictionary of Occupational Titles (DOT) code for hand trimmer is 784.684-050, and the DOT rated this work as light, unskilled work, with a specific vocational preparation (SVP) of 2. (Tr. 25). However, because Plaintiff performed the work in a seated position, it was sedentary as she performed it. (*Id.*). The ALJ posed a hypothetical question that assumed a person of Plaintiff's age, education, and work experience, who could perform work at all exertional levels, but could not be exposed to heights, moving machinery, workplace hazards, or transactional interaction with the public. (Tr. 25-26). The VE replied that such a person could perform Plaintiff's past work as a hand trimmer. (Tr. 26). The ALJ posed a

second hypothetical that assumed the same limitations as the first hypothetical, with the added restriction that the individual could have only incidental contact with coworkers and supervisors. (*Id.*). The VE replied that the individual still could perform the hand trimmer job. (*Id.*). However, if the hypothetical individual missed more than one day of work per month, the VE testified that she would not be able to sustain gainful employment. (*Id.*).

## Plaintiff's Statement of Issues

Plaintiff raises four objections to the ALJ's decision (Doc. 7, at 2):

1. The ALJ failed to consider all of her impairments in combination;

2. The ALJ erred in determining that Plaintiff could perform her past relevant work;

3. The ALJ improperly determined that Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels; and

4. The ALJ failed to fully and fairly develop the record.

Defendant contends the ALJ's decision is supported by substantial evidence in all respects and should be affirmed.

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age,

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### Consideration of the Combination of Impairments

Plaintiff initially contends the ALJ erroneously failed to consider her impairments in combination. Specifically, Plaintiff claims that the ALJ failed to "consider or discuss in any detail, her diagnosed borderline personality disorder, depressive disorder, post traumatic stress disorder or obesity." (Doc 7, at 13-15). To the contrary, the ALJ's decision contains a thorough discussion of Plaintiff's impairments. (Tr. 36-42). The ALJ found Plaintiff had seizure disorder and mood disorder (anxiety/panic attacks), both of which constitute severe impairments. (Tr. 36). In addition, while not identified as severe impairments, the ALJ also discussed medical records containing diagnoses of borderline personality disorder, depressive disorder and post-traumatic stress disorder. (Tr. 39, 42). Further, as Defendant points out, the RFC determination reached by the ALJ limited Plaintiff to work in which interpersonal contact with co-workers and the public is superficial and incidental to the work being performed. (Tr. 38). Thus, the decision shows the ALJ appropriately considered Plaintiff's mental impairments.

Plaintiff makes the conclusory statement that "Ms. Stewart's obesity will undoubtedly affect her ability to stand and walk for extended periods and render her susceptible to future obesity-related health problems." (Doc. 7, at 14). Defendant correctly points out, however, that Plaintiff cites no evidence whatsoever that her obesity actually had any effect upon her ability to stand or walk, or had any actual impact upon her health. In addition, there is no indication that Plaintiff ever alleged,

during the administrative process, that her obesity affected her ability to work. Moreover, neither Plaintiff's "Pre-Hearing Memorandum" (Tr. 216-17) nor her appeal from the ALJ's decision to the Appeals Council (Tr. 220-21) even mention obesity as a condition which contributed to Plaintiff's alleged disability. There is simply no basis to conclude the ALJ erred in failing to specifically discuss Plaintiff's obesity, where Plaintiff herself failed to do so, much less present any evidence that this condition contributed to her alleged disability. *See, e.g.*, *Young v. Comm'r of Soc. Sec.*, 2011 WL 2182869, *9 (N.D. Ohio) (finding ALJ was not required to give obesity express consideration where Plaintiff failed to allege obesity as an impairment or provide evidence).

When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, *5. An ALJ's cursory reference to the combined effect of a plaintiff's impairments is insufficient. *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989). However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, the ALJ specifically stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in reaching her RFC determination. (Tr. 38). A review of the decision bears that out.

### Plaintiff's Residual Functional Capacity

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."

20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. The regulations provide the ALJ will assess a claimant's "physical abilities", "mental abilities," and "other abilities affected by impairment(s)". *Id.* § 4016.945(b)-(d). Regarding "other abilities", the regulations provide:

> Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

*Id.* § 416.945(d). The regulations describe a claimant may have both "exertional" and "nonexertional" limitations on his ability to work. *Id.* § 416.969a(a). "Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." *Id.*; see *also* SSR 96-4p, 1996 WL 374187, *1 ("[E]xertional limitations affect an individual's ability to meet the strength demands of jobs, and nonexertional limitations or restrictions affect an individual's ability to meet the nonstrength demands of jobs."). One example of a nonexertional limitation given by the regulations is a claimant may "have difficulty tolerating some physical feature(s) of certain work settings, e.g., [the claimant] cannot tolerate dust or fumes". 20 C.F.R. § 416.969a(c)(1)(v).

Supported by a detailed summary of Plaintiff's medical record evidence, together with her subjective testimony, the ALJ found Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant must work where seizure precautions are observed. She must not be exposed to unprotected

> heights, moving machinery, or work place hazards. The claimant must work where interpersonal contact with co-workers and the public is superficial and incidental to the work performed consistent with assembly work.

This conclusion is supported by substantial evidence. A review of the record evidence fails to demonstrate any medical limitation on Plaintiff's ability to sit, stand, walk, or lift. The ALJ did note multiple medical examinations, including an electroencephalogram (EEG) and several neurological examinations, none of which showed focal abnormality or epileptiform activity. (Tr. 39, 244, 318). Plaintiff's assertions that the ALJ disregarded medical evidence and was somehow unduly influenced by her personal observations of Plaintiff herself are simply not supported by the record. In addition, Plaintiff asserts that the ALJ became sidetracked by the uncertainty of the etiology of her seizures. (Doc. 7, at 15). Even Plaintiff's own physicians were unsure whether her seizures were true seizures or psuedoseizure activity. (Tr. 306). As Defendant properly observes, however, the ALJ gave Plaintiff the benefit of the doubt when she limited her work to settings with seizure precautions such as no exposure to unprotected heights, moving machinery or work-place hazards. (Tr. 38). The medical evidence further supports the ALJ's determination that Plaintiff's mental impairments would restrict her to work where interpersonal contact is merely incidental to the work performed. (Tr. 38).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); *see also Saddler*

*v. Comm'r of Soc. Sec.*, 1999 WL 137621 (6th Cir.); 20 C.F.R. § 416.929(c)(3). The administrative decision, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *1-2; *Felisky*, 35 F.3d at 1036 (citing *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)).

Plaintiff asserts the ALJ improperly discredited her testimony regarding her seizures and medication side effects. (Doc. 7 at 17-18). The medical records demonstrate, however, that Plaintiff did not follow prescribed treatment. Dr. Yendrek proposed trial of a new anti-anxiety medication (Tr. 370), but Plaintiff missed her appointments and was discharged from treatment (Tr. 19). She knew she would be required to undergo an in-patient psychiatric evaluation, which she was not willing to do. (Tr. 19-20). Plaintiff's failure to follow prescribed treatment is appropriately considered by the ALJ in making determination of Plaintiff's credibility. *See* SSR 96-7p, 1996 WL 374186, *7.

Plaintiff further asserts that the ALJ failed to consider the VE's testimony that there would not be jobs in the national economy if it was assumed an individual with Plaintiff's limitations was further required to miss more than one day of work per month. (Tr. 26). However, as Defendant correctly points out, the evidence in the record does not support the conclusion that Plaintiff would necessarily miss more than one day of work per month.

Therefore, the Court finds the ALJ's RFC determination supported by substantial evidence.

### Past Relevant Work

Plaintiff asserts the ALJ's determination that she could perform her past relevant work is

10

premised upon the "somewhat ludicrous" conclusion that given her seizures and the effect of her medication, she could work as a blanket trimmer. (Doc. 7, at 17-18). However, at the hearing, the VE testified that an individual with Plaintiff's RFC for work with seizure precautions and limited interpersonal contact could perform Plaintiff's past relevant work as a hand trimmer. (Tr. 26). A review of the record reflects that the hypothetical question posed to the VE set forth the limitations the ALJ determined, upon substantial evidence, to be applicable, such that the VE's opinion constitutes substantial evidence that Plaintiff could perform her past relevant work as a hand trimmer. Because there was substantial evidence that the requirements of Plaintiff's past relevant work as a hand trimmer do not exceed her RFC, the ALJ properly found Plaintiff to be not disabled. (Tr. 43).

**Failure to Develop the Record**

Plaintiff asserts that the ALJ failed to develop the record by not ordering a consultative examination to determine the effects of Plaintiff's obesity and by failing to obtain a Mental RFC Assessment. (Doc. 7 at 20).

An ALJ has a duty to develop the record because of the non-adversarial nature of Social Security benefits proceedings. *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983). The Sixth Circuit has emphasized that this duty is particularly important when a claimant is acting *pro se*. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983); *cf. Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (rejecting claimant's argument under *Lashley* that ALJ failed to develop the record by noting: "*Lashley* concerned an ALJ's duty in the case of a pro se claimant . . . whereas Mrs. Kelly was represented by counsel at the hearing. Mrs. Kelly has made no showing that she was unable for any reason to present her case."). The duty to

develop the record, however, is balanced with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (explaining claimant's burden to prove disability).

> As the Sixth Circuit pointed out in *Landsaw*:
>
> Moreover . . . the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. 20 C.F.R. § 416.917(a).
>
> As to the ALJ's duty to conduct a "full inquiry," 20 C.F.R. § 416.1444, we adopt the following statement by the Fifth Circuit which applies equally to the present case and disposes of plaintiff's argument:
>
> "[F]ull inquiry" does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision. In appellant's case, the evidence in the record upon which the administrative law judge based his denial of benefits fully developed the facts necessary to make that determination. The [evidence] supports the conclusion that appellant is not disabled....

*Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977) (emphasis in original)).

Plaintiff was represented by counsel before the ALJ in this case. Also, as noted above, Plaintiff's attorney did not raise obesity as a basis for disability. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("Ordinarily, the claimant must in some fashion raise the issue sought to be developed."); *Ferrari v. Comm'r of Soc. Sec.*, 1996 WL 549782, *1 (6th Cir.) ("[T]he record shows that Ferrari's counsel did not raise the mental issue before the Commissioner. As the issue was not raised at the administrative level, Ferrari is not entitled to a remand."). Therefore, the ALJ

had no obligation to order a consultative examination with regard to Plaintiff's obesity.

Additionally, a Mental Diagnostic Evaluation of Plaintiff was obtained from Dr. Chambers. (Tr. 319-24). Dr. Chambers opined that Plaintiff has a normal ability to communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic work-like tasks, attend and sustain concentration on basic tasks, sustain persistence in completing tasks, and complete work-like tasks within an acceptable time frame, unless she was around a large group of people. (Tr. 323). The ALJ properly relied upon Dr. Chambers' assessment. (Tr. 37, 40-41). Thus, the ALJ fully and fairly developed the record in this regard.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds substantial evidence of record and relevant legal precedent support the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act because she had the RFC for work with seizure precautions and limited interpersonal contact, and thus could perform her past relevant work as a hand trimmer. The ALJ fully and fairly developed the record, and properly considered the combination of Plaintiff's impairments. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                                  s/James R. Knepp II
                                                  United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).